UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| CYNTHIA ALLEN, | ) | No. EDCV 08-1089-RC |
| Plaintiff, | ) | |
| | ) | OPINION AND ORDER |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Cynthia Allen filed a complaint on August 18, 2008, seeking review of the Commissioner's decision denying her application for disability benefits.  On January 13, 2009, the Commissioner answered the complaint, and the parties filed a joint stipulation on March 11, 2009.

## BACKGROUND

### I

On March 25, 2005 (protective filing date), plaintiff applied for disability benefits under the Supplemental Security Income program ("SSI") of Title XVI of the Social Security Act ("Act"), 42 U.S.C.

§ 1382(a), claiming an inability to work since November 1, 2004, due to hearing loss, back pain, osteoarthritis, stress, migraine headaches, and severe breathing problems.  Certified Administrative Record ("A.R.") 72, 74-76, 121-22.  The plaintiff's application was initially denied on June 14, 2005, A.R. 40-45, and was denied again on August 17, 2005, following reconsideration.  A.R. 46-52.  The plaintiff then requested an administrative hearing, A.R. 54, which was held before Administrative Law Judge Bernard A. Trembly ("ALJ Trembly") on March 19, 2007.  A.R. 358-80.  On June 7, 2007, ALJ Trembly issued a decision finding plaintiff is not disabled.  A.R. 30-37.

The plaintiff appealed the decision to the Appeals Council, A.R. 29, which granted review on September 21, 2007, vacated ALJ Trembly's decision, and remanded the case to an ALJ to:

- Obtain additional evidence concerning the claimant's musculoskeletal, asthma and mild hearing loss conditions in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR [§] 416.912-913).  The additional evidence should include updated records from High Desert, and may include, if warranted and available, a consultative orthopedic examination and medical source statements about what the claimant can still do despite the impairments.
- Further evaluate the claimant's subjective complaints

2

1          and provide rationale in accordance with the disability

2          regulations pertaining to evaluation of symptoms (20

3          CFR [§] 416.929) and Social Security Ruling 96-7p.

4     •    Give further consideration to the claimant's maximum

5          residual functional capacity and provide appropriate

6          rationale with specific references to evidence of

7          record in support of the assessed limitations (20 CFR

8          [§] 416.945 and Social Security Ruling 96-8p).

9     •    If warranted by the expanded record, obtain evidence

10          from a vocational expert to clarify the effect of the

11          assessed limitations on the claimant's occupational

12          base (Social Security Rulings 83-14, 85-15 and 96-6p).

13          The hypothetical questions should reflect the specific

14          capacity/limitations established by the record as a

15          whole. . . .

16

17 A.R. 27-28.

18

19     On May 5, 2008, ALJ F. Keith Varni ("the ALJ") held a new

20 administrative hearing, A.R. 381-89, and on May 28, 2008, the ALJ

21 issued a decision finding plaintiff is not disabled.  A.R. 8-16.  The

22 plaintiff appealed this decision to the Appeals Council, A.R. 7, which

23 denied review on July 8, 2008.  A.R. 4-6.

24

25                          **II**

26     The plaintiff, who was born on September 10, 1955, is currently

27 54 years old.  A.R. 74, 363.  She has a tenth-grade education, A.R.

28 127, and has previously worked as a janitor and waitress, A.R. 122,

1  146, but has not worked within the past 15 years.  A.R. 364.

2

3      On October 21, 2003, John C. Barker, M.S., a clinical audiologist
4  at the Desert Knolls Hearing and Speech Center, evaluated plaintiff,
5  conducted audiological testing, and found plaintiff has "[h]earing
6  loss [in] both ears.  Difficulty understanding speech, especially in
7  noise.  Occasional tinnitus [in] both ears."  A.R. 163-65.
8  Tympanometry was normal in both ears with no evidence of middle ear
9  pathology, audiometry revealed mild sensorineural loss in both ears,
10  and acoustic reflex testing demonstrated the ipsilateral acoustic
11  reflexes were absent in the right ear, but within normal limits in the
12  left ear.  A.R. 163.  Mr. Barker recommended binaural hearing aids.
13  Id.  Mr. Barker conducted a follow-up audiological evaluation on
14  December 21, 2004, at which time "ipsilateral acoustic reflexes were
15  absent in both ears," but otherwise the findings and recommendations
16  were the same as in 2003.  A.R. 166-67.

17

18      Between November 15 and 21, 2004, plaintiff was admitted to
19  Victor Valley Community Hospital, where she was examined by physician
20  Mukeschandra M. Patel, M.D., who diagnosed her with asthmatic
21  bronchitis and diarrhea, and prescribed Albuterol[1] and Azmacort,[2]
22  among other medication.  A.R. 177-201.

23

24      [1]  Albuterol, also called Proventil, is used to prevent and
25  relieve bronchial spasms, especially those caused by asthma.  The
   PDR Family Guide to Prescription Drugs, 17, 550 (8th ed. 2000).
26
       [2]  Azmacort is a "metered-dose inhaler[] containing [an]
27  anti-inflammatory steroid medication. . . .  Azmacort is used as
   long-term therapy to control bronchial asthma attacks."  Id. at
28  70.

1    On June 1, 2005, non-examining physician Joseph Hartman, M.D.,
2  diagnosed plaintiff with mild sensorineural hearing loss and lumbar
3  spine osteoarthritis, and opined plaintiff: can occasionally lift
4  and/or carry up to 20 pounds, climb, balance, stoop, kneel, crouch and
5  crawl; can frequently lift and/or carry up to 10 pounds; can stand,
6  walk and sit about 6 hours in an 8-hour workday, with normal breaks;
7  and has limited hearing due to mild sensorineural hearing loss and
8  should "avoid even moderate exposure" to noise.  A.R. 249-56.  Dr.
9  Hartman concluded plaintiff can perform light work with appropriate
10  postural and environmental limitations.  A.R. 256.

12    On May 5, 2006, plaintiff had difficulty breathing and was
13  examined at Victor Valley Community Hospital, where she was diagnosed
14  with acute bronchitis/pharyngitis, treated with a nebulizer and
15  Albuterol, and prescribed medication.  A.R. 272-82.

17    On February 16, 2008, Warren David Yu, M.D., an orthopedic
18  surgeon, examined plaintiff, diagnosed her with lumbar spine
19  myofascial pain, and opined that plaintiff: can walk without an
20  assistive device; can occasionally lift and/or carry up to up to 20
21  pounds, climb, balance, stoop, kneel, crouch, crawl, work at
22  unprotected heights or around moving mechanical parts, operate a motor
23  vehicle, and be exposed to humidity, wetness, dust, odors, fumes,
24  pulmonary irritants, extreme cold or heat, and vibrations; can
25  frequently lift and/or carry up to 10 pounds, operate foot controls,
26  and use her upper extremities for pushing, pulling, reaching, fine
27  finger motor movements, handling and fingering; can sit for up to two
28  hours at a time and six hours in an eight-hour day; can stand or walk

1   for one hour at a time and up to six hours in an eight-hour day; and

2   can tolerate exposure to loud noise.  A.R. 330-39.  Dr. Yu did not

3   evaluate plaintiff's hearing.  A.R. 337.

4

5                               **DISCUSSION**

6                                  **III**

7        The Court, pursuant to 42 U.S.C. § 405(g), has the authority to

8   review the Commissioner's decision denying plaintiff disability

9   benefits to determine if his findings are supported by substantial

10  evidence and whether the Commissioner used the proper legal standards

11  in reaching his decision.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th

12  Cir. 2009); Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009).

13

14       The claimant is "disabled" for the purpose of receiving benefits

15  under the Act if she is unable to engage in any substantial gainful

16  activity due to an impairment which has lasted, or is expected to

17  last, for a continuous period of at least twelve months.  42 U.S.C.

18  § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a).  "The claimant bears the

19  burden of establishing a prima facie case of disability."  Roberts v.

20  Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122

21  (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

22

23       The Commissioner has promulgated regulations establishing a five-

24  step sequential evaluation process for the ALJ to follow in a

25  disability case.  20 C.F.R. § 416.920.  In the **First Step**, the ALJ

26  must determine whether the claimant is currently engaged in

27  substantial gainful activity.  20 C.F.R. § 416.920(b).  If not, in the

28  **Second Step**, the ALJ must determine whether the claimant has a severe

impairment or combination of impairments significantly limiting her from performing basic work activities.  20 C.F.R. § 416.920(c).  If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work.  20 C.F.R. § 416.920(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. § 416.920(g).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since March 25, 2005, the application date.  (Step One).  The ALJ then found plaintiff "has a severe impairment of the musculoskeletal and respiratory systems[,]" but does not have a severe hearing impairment or mental health impairment (Step Two); and plaintiff does not have an impairment or combination of impairments that meets or equals a Listing.  (Step Three).  The ALJ next found plaintiff has no past relevant work.  (Step Four).  Finally, the ALJ determined plaintiff can perform a significant number of jobs in the national economy; therefore, she is not disabled.  (Step Five).

**IV**

As an initial matter, plaintiff primarily complains that the ALJ failed to comply with the Appeals Council's remand order.  Jt. Stip.

7

1    at 2:16-24.  That is certainly true.  However, "federal courts only

2    have jurisdiction to review the final decisions of administrative

3    agencies.  When the Appeals Council denied review of the ALJ's second

4    decision, it made that decision final, and declined to find that the

5    ALJ had not complied with its remand instructions."  Tyler v. Astrue,

6    305 Fed. Appx. 331, 332 (9th Cir. 2008) (citations omitted).  Thus,

7    this Court "decline[s] to evaluate whether the ALJ's . . . decision

8    satisfied the demands of the Appeals Council's remand."  Id.

9

10                                    V

11       A claimant's residual functional capacity ("RFC") is what she

12   can still do despite her physical, mental, nonexertional, and

13   other limitations.  Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir.

14   2001); see also Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685,

15   689 (9th Cir. 2009) (The RFC is "a summary of what the claimant is

16   capable of doing (for example, how much weight he can lift).").  Here,

17   the ALJ found plaintiff has the RFC "to perform light work defined in

18   20 CFR [§] 416.967(b)."[3]  A.R. 13.  However, plaintiff contends the

19   RFC finding, and ultimate Step Five determination, are not supported

20   by substantial evidence because the ALJ improperly rejected the

21   opinion of nonexamining physician Dr. Hartman.  The plaintiff is

22   //

23   _____

24        [3]  "Light work involves lifting no more than 20 pounds at a
     time with frequent lifting or carrying of objects weighing up to
25   10 pounds.  Even though the weight lifted may be very little, a
     job is in this category when it requires a good deal of walking
26   or standing, or when it involves sitting most of the time with
     some pushing and pulling of arm or leg controls.  To be
27   considered capable of performing a full or wide range of light
     work, you must have the ability to do substantially all of these
28   activities."  20 C.F.R. § 416.967(b).

1 correct.[4]

2

3       "The Commissioner may reject the opinion of a nonexamining

4 physician by reference to specific evidence in the medical record."

5 Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998).  However,

6 while "not bound by findings made by State agency or other program

7 physicians and psychologists, [the ALJ] may not ignore these opinions

8 and must explain the weight given to the opinions in their decisions."

9 S.S.R. 96-6p, 1996 WL 374180, *2 (S.S.A.);[5] see also 20 C.F.R.

10 § 416.927(f) ("20 C.F.R. § 416.927(f)(2)(i) ("State agency medical and

11 psychological consultants and other program physicians and

12 psychologists are highly qualified physicians and psychologists who

13 are also experts in Social Security disability evaluation.  Therefore,

14 administrative law judges must consider findings of State agency

15 medical and psychological consultants or other program physicians or

16 psychologists as opinion evidence. . . ."); Sawyer v. Astrue,

17 303 Fed. Appx. 453, 455 (9th Cir. 2008) ("An ALJ is required to

18 consider as opinion evidence the findings of state agency medical

19

20       [4]   Analytically, the ALJ's error occurred at Step Two, when
the ALJ found plaintiff does not have a severe hearing
21 impairment.  However, since plaintiff does not raise a Step Two
claim, but instead attacks the ALJ's assessment of her RFC, the
22 Court addresses plaintiff's claim in the context of her RFC.

23       [5]   Social Security Rulings constitute the Social Security
Administration's interpretations of the statute it administers
24 and of its own regulations.  Massachi v. Astrue, 486 F.3d 1149,
1152 n.6 (9th Cir. 2007); Ukolov v. Barnhart, 420 F.3d 1002, 1005
25 n.2 (9th Cir. 2005).  Although Social Security Rulings do not
have the force of law, Chavez v. Dep't of Health & Human Servs.,
26 103 F.3d 849, 851 (9th Cir. 1996), once published, they are
binding upon the Commissioner.  Holohan v. Massanari,
27 246 F.3d 1195, 1202-03 n.1 (9th Cir. 2001); Gatliff v. Comm'r of
the Soc. Sec. Admin., 172 F.3d 690, 692 n.2 (9th Cir. 1999).

28

1  consultants; the ALJ is also required to explain in his decision the

2  weight given to such opinions."); <u>Haynes v. Barnhart</u>, 416 F.3d 621,

3  630 (7th Cir. 2005) ("[T]he regulations require an ALJ to consider

4  opinions offered by medical experts, [but] an ALJ is not bound by

5  those opinions and must evaluate them in the context of the expert's

6  medical specialty and expertise, supporting evidence in the record,

7  and other explanations regarding the opinion.").

8

9      Here, the ALJ rejected Dr. Hartman's limitation that plaintiff

10  must "avoid even moderate noise[,]" stating plaintiff's "mild degree

11  of decreased hearing in both ears does not justify the preclusion from

12  even a moderate exposure to 'noise.'"  A.R. 13.  The ALJ then

13  explained his reasoning, stating:

14

15      The [plaintiff] need not avoid high frequency, high

16      intensity sound to a degree greater than any member of the

17      general population.  The [plaintiff] showed adequate speech

18      reception threshold at 35 dB (right ear) and 40 dB (left

19      ear), and very adequate speech discrimination at 80% in both

20      ears.  The [plaintiff] never wore and never needed aids.

21      . . .

22

23  A.R. 13-14.  Thus, in making the RFC determination, and rejecting any

24  noise limitation therein, the ALJ acted as his own medical expert,

25  substituting his opinion for Dr. Hartman's professional interpretation

26  of the clinical audiologist's examination results, which is improper.

27  <u>Day v. Weinberger</u>, 522 F.2d 1154, 1156 (9th Cir. 1975); <u>see also</u>

28  <u>Nguyen v. Chater</u>, 172 F.3d 31, 35 (1st Cir. 1999) (As a lay person, an

ALJ is "not at liberty to ignore medical evidence or substitute his own views for uncontroverted medical opinion"; he is "simply not qualified to interpret raw medical data in functional terms."); Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) ("'[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion. . . .'" (citations omitted)); Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996) (ALJ "must not succumb to the temptation to play doctor and make [his] own independent medical findings."); Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985) (ALJ may not substitute his interpreta-tion of laboratory reports for that of physician).  Moreover, even if otherwise proper, the ALJ's rationale that plaintiff has "never needed [hearing] aids" is belied by the record, which shows that the clinical audiologist in 2003, and again in 2004, recommended binaural hearing aids for plaintiff.  See A.R. 163, 166.

Additionally, Dr. Hartman's opinion is consistent with the opinions of plaintiff's treating physicians, Dr. Krider of the Formula Medical Group, who noted in plaintiff's records that she has "hearing loss sensorineural," A.R. 204, 206, 212, 220, and Dr. Samuel Wilson of the High Desert Community Care Center, who noted in plaintiff's records that she is "nerve deaf" and has "sensorineural hearing loss."[6]  A.R. 300, 353; see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of . . . non-examining physicians may

---

    [6]  Dr. Hartman's opinion is also consistent with the lay witness statement of Sharon L. Gallas (signed by Ken Arentz, "helping"), see A.R. 94-102, who stated plaintiff "can't hear phone, door, or conversations unless she can see your face[,]" A.R. 94, and she has problems "understanding" and "following instructions" due to her hearing loss.  A.R. 99.

1    . . . serve as substantial evidence when the opinions are consistent

2    with independent clinical findings or other evidence in the record.").

3

4        Hypothetical questions posed to a vocational expert must consider

5    all of the claimant's limitations, <u>Bray v. Astrue</u>, 554 F.3d 1219, 1228

6    (9th Cir. 2009); <u>Thomas</u>, 278 F.3d at 956, and "[t]he ALJ's depiction

7    of the claimant's disability must be accurate, detailed, and supported

8    by the medical record."  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1101 (9th

9    Cir. 1999).  Here, since the ALJ's hypothetical question to vocational

10   expert Joseph Mooney set forth an individual who could perform a

11   limited range of light work, without any limitation to "avoid even

12   moderate noise," the vocation expert's responses that plaintiff could

13   perform the jobs of hand packager, Dictionary of Occupational Titles

14   ("DOT") 920.587-018, assembler, DOT 706.684-030, and cleaner or

15   housekeeper, DOT 323.687-014, A.R. 388, are not based on substantial

16   evidence.  Moreover, the job of hand packager requires medium work and

17   exposure to "loud" noise, U.S. Dep't of Labor, <u>Selected Characteris-</u>

18   <u>tics of Occupations Defined in the Revised Dictionary of Occupational</u>

19   <u>Titles</u>, 316 (1993), and although the jobs of assembler and cleaner or

20   housekeeper require only sedentary or light work, respectively, both

21   require exposure to "moderate" noise.  <u>Id.</u> at 132, 283.  Therefore,

22   the ALJ's erroneous RFC assessment is not harmless error.  <u>See</u> <u>Burch</u>

23   <u>v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ

24   will not be reversed for errors that are harmless.").

25

26                                    **VI**

27       Since substantial evidence does not support the ALJ's RFC

28   assessment or Step Five determination, <u>Lingenfelter v. Astrue</u>,

1  504 F.3d 1028, 1040-41 (9th Cir. 2007), the Court has authority to
2  affirm, modify or reverse the Commissioner's decision "with or without
3  remanding the cause for rehearing."  42 U.S.C. § 405(g); McCartey v.
4  Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002).  "Remand for further
5  administrative proceedings is appropriate if enhancement of the record
6  would be useful."  Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir.
7  2004).  Here, remand is appropriate so the ALJ can properly consider
8  plaintiff's hearing loss and augment the record as necessary.[7]
9  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1167 (9th Cir.
10 2008); Widmark v. Barnhart, 454 F.3d 1063, 1070 (9th Cir. 2006).

11

12                                  **ORDER**

13      IT IS ORDERED that: (1) plaintiff's request for relief is
14 granted; and (2) the Commissioner's decision is reversed, and the
15 action is remanded to the Social Security Administration for further
16 proceedings consistent with this Opinion and Order, pursuant to
17 sentence four of 42 U.S.C. § 405(g), and Judgment shall be entered
18 accordingly.

19

20 DATE:  October 7, 2009              /S/ ROSALYN M. CHAPMAN
                                       ROSALYN M. CHAPMAN
21                                     UNITED STATES MAGISTRATE JUDGE

22

23

24

25  _____

26      [7]  Having reached this conclusion, it is unnecessary to
    reach the other claims plaintiff raises, none of which warrant
27  any further relief than herein granted.

28  R&R-MDO\08-1089.mdo
    10/7/09

                                    13